FILED

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

99 DEC 13 PM 3:45

U.S. DISTRICT COURT
N.D. OF ALABAMA

| | |
|---|---|
| STARMART, INC. and JERRY FLUMMER, d/b/a PAK-A-SAK, | ) ) ) |
| Plaintiffs, | ) ) |
| vs. | CV 99-PT-1143-E ) ) |
| WAL-MART STORES, INC. and MURPHY OIL USA, INC., | ) ) ) |
| Defendants. | ) ) |

ENTERED
DEC 1 3 1999

## MEMORANDUM OPINION

This cause comes to be heard on Defendant Wal-Mart Stores, Inc.'s ("Wal-Mart") Motion for Summary Judgment filed October 5, 1999.

## BACKGROUND

Plaintiffs Starmart, Inc. ("Starmart") and Jerry Flummer, d/b/a Pak-A-Sak ("Flummer"), sued Murphy Oil USA, Inc. ("Murphy Oil") and Wal-Mart for injunctive relief, damages, and attorney's fees under the Alabama Motor Fuel Marketing Act ("AMFMA" or the "Act"), Ala. Code § 8-22-1 et seq. (1975), and the Alabama Deceptive Trade Practices Act ("ADTPA"), Ala. Code § 8-19-1 et seq. (1975). Plaintiffs claim that Wal-Mart and Murphy Oil are in an implied partnership or joint venture with each other, and that together they sold, offered to sell, or advertised for sale gasoline at the Wal-Mart/Murphy Oil retail outlet in Anniston, Alabama at retail prices below the defendants' "cost to retailer" in violation of Alabama law.

1

Plaintiffs are two retail gasoline marketers who sell gasoline at a total of four locations. Starmart is an Alabama corporation which operates two Exxon branded retail gasoline/convenience store locations in Alabama, one of which is located in Anniston, a few hundred yards north of the Wal-Mart/Murphy Oil location, the other of which is located in Jacksonville, Alabama. Flummer operates two retail branded gasoline locations in Oxford, Alabama.

Wal-Mart and Murphy Oil entered into a written lease agreement on November 12, 1998 (the "Lease") whereby Murphy Oil rents property in Anniston, Alabama owned by Wal-Mart. This lease is part of a national strategy on the part of Wal-Mart to add gasoline to the array of products offered for sale at its SuperCenters. Wal-Mart sought bids from oil manufacturers, and after an intensive promotional campaign, Murphy Oil won Wal-Mart's American southeast region.

Under the Lease, Murphy Oil pays rent to Wal-Mart for the land that it occupies under the Lease. The rent is either a predetermined base amount, or a percentage of the profits, whichever is more. Murphy Oil determines the price of the gas sold. However, Wal-Mart determines the discount available with its "Gift Card Discount." Discounts have ranged from three to five cents off per gallon of gas. The Lease states that if the price of gasoline dips below the level permitted by applicable law via the Gift Card discount, then the price should be lowered only to the level permitted by applicable law. The Lease further states that Murphy Oil is not required to price its gasoline in an unlawful manner to meet competitors' prices.

## DISCUSSION

### A. Summary Judgment Standard

Summary judgment may be granted based upon facts developed during the administrative

proceedings, the pleadings, discovery, and supplemental affidavits if together, they show that there is no genuine issue as to any material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. Id. The non-moving party then bears the burden of showing that there are specific facts demonstrating that there is a genuine issue of fact for trial. Id. at 324. The trial court must resolve all reasonable doubts in favor of the non-moving party, but need not resolve all doubts in a similar fashion. Barnes v. Southwest Forest Indus., Inc., 814 F.2d 607, 609 (11th Cir. 1987).

### B. Alabama Motor Fuel Marketing Act

#### 1. Parties' Contentions

Wal-Mart contends that it simply cannot be held liable as a matter of law because it lacks the requisite intent to injure competition or competitors through below cost sales of motor fuel as required by State ex rel Galanos v. Mapco Petroleum, Inc., 519 So.2d 1275, 1286 (Ala. 1987), and McGuire Oil Co. v. Mapco, Inc., 612 So.2d 417 (Ala. 1992). Furthermore, Wal-Mart contends that it is not a "motor fuel marketer" as defined and required by the AMFMA. Ala. Code §§ 8-22-2(2), (3) and -4(3), (5), (11) (1975). Lastly, Wal-Mart argues that it is neither an affiliate, partner, nor joint venturer with Murphy Oil necessary to render it liable for Murphy Oil's acts.

Plaintiffs contend that whether or not Wal-Mart possessed the requisite intent to injure competition or competitors under the AMFMA is a question of fact appropriate only for the trier of fact. Plaintiffs next contend that Wal-Mart's advertising of gasoline violates the Act, or in the

3

alternative that Wal-Mart is in an implied partnership or joint venture with Murphy Oil, rendering it a "retailer" under the AMFMA, thereby rendering it liable under the Act. At the least, plaintiffs contend, a genuine issue of fact exists as to the nature of the relationship between Wal-Mart and Murphy Oil, precluding summary judgment.

### 2. Liability

Wal-Mart contends that implicit within the statute is the requirement that liability under the Act may fall only upon a wholesaler or retailer as defined in Ala. Code § 8-22-4 (1975) (Definitions).

The Alabama Supreme Court has held that §§ 8-22-3, -6, and -9 must be read in pari materia because, read in isolation and literally, they might otherwise lead to a conclusion that they are unreasonably overbroad or void for vagueness, and therefore, unconstitutional. Galanos, 519 So.2d at 1286 (Ala. 1987). AMFMA § 8-22-3 states in pertinent part:

> It is hereby declared to be the legislative intent to encourage fair and honest competition, and to safeguard the public against creation of monopolies or unfair methods of competition, in transactions involving the sale of, or offer to sell, or inducement to sell motor fuel in the wholesale and retail trades in this state. It is further declared that the advertising, offering for sale, or sale of motor fuel below cost or at a cost lower than charged other persons on the same marketing level with the intent of injuring competitors or destroying or substantially lessening competition is an unfair and deceptive trade practice...

AMFMA § 8-22-6 states that "It shall be unlawful for any person engaged in commerce in this state to sell or offer to sell motor fuel below cost..." AMFMA defines "SALE or SELL" as "Any transfer for a combination, exchange, barter, gift, offer for sale, advertising for sale, soliciting an order for motor fuel and distribution in any manner or by any means whatsoever." Ala. Code § 8-22-4(7) (1975). "Person" is defined as "Any person, firm, association,

4

organization, partnership, business trust, joint stock company, company, corporation, or legal entity." Ala. Code § 8-22-4(1).

AMFMA § 8-22-9 states:

It shall be unlawful under this section:
(1) For any person engaged in commerce in this state to sell or offer to sell motor fuel at wholesale or retail, as the case may be, where the effect is to injure competition.
(2) For any person, where the effect is to injure competition, to offer a rebate, to offer to give a rebate, to offer a concession of any kind in connection with the sale of motor fuel.
(3) For any retailer to induce or attempt to induce or to procure or attempt to procure the purchase of motor fuel at a price less than cost to wholesaler. Any person who violates any provision of this section shall be subject to the provisions and penalties of this chapter.

It is telling to note that within the Act, the Legislature specifically uses "any person" and "any retailer" in different sections of the act, apparently intending to give these different sections and different words different meanings. "The cardinal rule of statutory interpretation is to determine and give effect to the intent of the legislature as manifested in the language of the statute." Ex parte State Dept. of Revenue, 683 So.2d 980, 983 (Ala. 1996). "A basic principle of statutory construction is that it will be presumed that every word, sentence, or provision of a statute has meaning and effect." J.W. Hartlein Construction Co. v. Seacrest Assoc., L.L.C., 1999 WL 148237, slip op. at *2 (Ala. Civ. App. March 19, 1999), citing Ex parte Children's Hosp. of Alabama, 721 So.2d 184 (Ala. Civ. App. 1998). The Alabama Supreme Court "presume[s] that the Legislature knows the meaning of the words it uses in enacting legislation." Ex parte Jackson, 614 So.2d 405, 407 (Ala. 1993). Based on these cannons of statutory construction, this court concludes that the Legislature intended what it wrote: that "any person" as defined by the Act may potentially be held liable under the Act and that to be liable under the Act, one need not

5

necessarily be a dealer or wholesaler.

Furthermore, the <u>Galanos</u> Court held that these sections read in pari materia lead to the conclusion that an intent requirement is implicit within the Act, saving it from unconstitutionality. The parties are in agreement that an intent requirement exists under the AMFMA. The Supreme Court of Alabama has held that lack of intent to injure competition is an affirmative defense permitting summary judgment. <u>McGuire Oil Co. v. Mapco, Inc.</u>, 612 So.2d 417, 423 (Ala. 1992), citing <u>Galanos v. Mapco, Inc.</u>, 519 So.2d at 1286-87. This defense is essentially laid out in §§ 8-22-12 and -13 which discuss the general applicability of the Act. <u>See Galanos,</u> 519 So.2d at 1286-87. These statutory exceptions include isolated transactions not in the usual course of business, clearance sales, imperfect or damaged sales, final liquidation sales, as directed by a court, or in a good faith attempt to meet the price of a competitor. Ala. Code §§ 8-22-12 and -13 (1975). The <u>Galanos</u> court qualified its holding though, in stating that a genuine issue of material fact may often be present as to the defendant's intent. 519 So.2d at 1286-87.

Wal-Mart directs this court's attention to a recent Tennessee district court opinion which addressed substantially identical issues as are raised in this case. <u>See Gowan Car Care Ctr., et al., v. Wal-Mart Stores, Inc. and Murphy Oil USA, Inc.</u>, No. 98-106 (E.D. Tenn. filed May 19, 1999). In that case, the court dismissed the action holding that, under Tennessee law, Wal-Mart and Murphy Oil were not partners and thus Wal-Mart could not be a defendant under the Tennessee Petroleum Trade Practices Act ("TPTPA"). The court further held that Murphy Oil was not a threat to obtain a monopoly share of the Fayetteville market.

While these cases are similar, the TPTPA is less broad than the AMFMA. It covers only dealers engaged in the sale of petroleum products. Tenn. Code Ann. §§ 47-25-602(2), 47-25-

6

611(a)(1) (1988). As discussed above, the AMFMA covers "any person[s] engaged in commerce," Ala. Code § 8-22-6, as well as retailers of motor fuel, Ala. Code §§ 8-22-4(5), -9(3). This leads to the conclusion that persons, as defined by the Act, with the requisite intent to injure competition may be held liable for advertising gasoline below cost.

Defendant Wal-Mart contends that reading the AMFMA to hold liable mere advertisers of gasoline would violate the Interstate Commerce Clause and the First Amendment of the United States Constitution. Wal-Mart contends that by limiting what Wal-Mart could say about the gasoline prices at Murphy Oil would violate its rights of free speech under the First Amendment and impermissibly burden interstate commerce. It contends that to interpret the Act this way could open the Anniston Star newspaper or Time Magazine to liability under the Act if they leased advertising space within their publications regarding the price of gasoline.

The First Amendment, as applied to the States via the Fourteenth Amendment, does protect commercial speech from unwarranted governmental regulation. Central Hudson Gas & Electric Corp. v. Public Service Comm'n of New York, 447 U.S. 557, 561 (1980). However, this protection is not unlimited: "The Constitution ... accords a lesser protection to commercial speech than to other constitutionally guaranteed expression." Id. at 562-63. Moreover, "[t]he government may ban forms of ... commercial speech related to illegal activity." Id. at 563-64; see also Florida Bar v. Went For It, Inc., 515 U.S. 618, 623-24 (1995) ("[T]he government may freely regulate commercial speech that concerns unlawful activity..."). Because the Act concerns unlawful activity, i.e. selling or offering to sell gasoline below cost, the government is free to regulate speech surrounding it. Moreover, the intent requirement discussed above resolves the problem posed by Wal-Mart. For example, the Anniston Star must have the specific

intent to injure competition under the Act in order to be held liable. Likewise, for Wal-Mart to be held liable it must be found to have the requisite intent to injure competition under the Act. Simply advertising gasoline at below cost prices without more does not render an entity liable. More is required.[1]

Wal-Mart does not deny that it does advertise gasoline. Plaintiff offers numerous exhibits which demonstrate that Wal-Mart does advertise gasoline. Exhibits N and O show the types of signs used in and around the Anniston, Alabama Wal-Mart. Exhibit N includes Wal-Mart's signing package #3 - "SHOW THE VALUE." This package includes photocopies of signs to be used by the store, and strategies for when, how, and where to display the signs. "This kit contians [sic] all the signing needed for both the Gas Station itself and the inside of the store." The signs mostly include the following script: "Now! 3¢ OFF PER GALLON on all grades With the WAL*MART Gift Card When you purchase gas at this Wal-Mart location only." For limited times, a "burst" would be attached to signs, stating: "INTRODUCTORY OFFER 5¢ OFF PER GAL. OFFER EXPIRES ___." None of the signs mentioned Murphy Oil. All signs stated "When you purchase gas at this Wal-Mart location only."

Exhibit O includes pictures taken of these signs displayed outside the Anniston Wal-Mart. Typical signs stated "Now! 3¢ OFF PER GALLON With the WAL*MART Gift Card When you purchase gas at this Wal-Mart location only." The image of a gasoline pump and handle is pictured in the background. Another sign stated "WITH YOUR WAL-MART GIFT

---

[1] It appears that this interpretation of the Act should be limited by the facts of this case, i.e. where two or more entities join forces, not necessarily in a partnership, for the explicit purpose of offering low priced gasoline to the public. This would exclude the Anniston Star.

CARD Today's Gas Price 105 [9] Unleaded." These signs were placed on the sidewalk in front of the Wal-Mart store as well as above and around the gas pumps at Murphy Oil.

Exhibit C includes the amended lease between Wal-Mart and Murphy Oil. Article 13.2 states:

> Wal-Mart's Right to Advertise on Premises. Wal-Mart shall have the exclusive right to utilize all pump toppers and spanners for advertising on the premises and on the Lessee Equipment .... Wal-Mart reserves the right to advertise that the purchase of gasoline with a Wal-Mart Gift Card at Lessee's stations is subject to immediate termination without notice to the customer. Lessee shall not refer to the Wal-Mart Gift Card in its advertising without the prior written consent of Wal-Mart.

While Murphy Oil, not Wal-Mart, sets the price of gasoline, and it is Murphy Oil employees and management who set and change the prices displayed in all advertisements, the Act does not require control over the price of the gasoline. It only requires advertising the gasoline at below cost prices. Therefore, it appears that Wal-Mart may be held liable under the Act if it possesses the requisite intent to injure competition.

Intent may be inferred from proof of a below cost sale coupled with proof of an injurious effect on competition. See McGuire, 612 So.2d at 422-23. An injurious effect on competition may be inferred by an injurious effect on a competitor. Id. at 422. Some recent court decisions have found violations of the AMFMA when the injury was to a single competitor. See Star Service & Petroleum Co., Inc. v. State ex rel Galanos, 518 So.2d 216 (Ala. Civ. App. 1986); Money Back, Inc. v. Gray, 569 So.2d 325 (Ala. 1990). Therefore, the issue of intent does not rest upon whether Wal-Mart whole-heartedly asserts that its intentions are good, which they may well be. The issue rests upon the effects of Wal-Mart's acts upon competitors. The court cannot determine the intent issue as a matter of law.

### 3. Implied Partnership

Alternatively, Plaintiffs contend that Wal-Mart may be held liable under the Act because it is in an implied partnership with Murphy Oil. Wal-Mart vigorously denies this allegation.

Alabama has adopted the Uniform Partnership Act, codified at Ala. Code § 10-8-1 *et seq.* (1975). Therein, a partnership is defined as "[a]n association of two or more persons to carry on as co-owners a business for profit." Ala. Code § 10-8-2(7) (1975). A "person" is defined as "Individuals, partnership, corporations and other associations..." Ala. Code § 10-8-2(3) (1975). Thus, it is legally possible for Wal-Mart and Murphy Oil to enter into a partnership. Regarding the determination of whether a partnership exists, Alabama's Partnership Act states in pertinent part:

> In determining whether a partnership exists, these rules shall apply:
> ...
> (4) The receipt by a person of a share of the profits of a business is prima facie evidence that he is a partner in the business, but no such inference shall be drawn if such profits were received in payment:
> ...
>     b. As ... rent to a landlord;

Ala. Code § 10-8-20 (1975). Helpful also is the partnership statute's delineation of rights and duties of partners:

> (1) Each partner shall ... share equally in the profits and ... must contribute toward the losses....
> ...
> (5) All partners have equal rights in the conduct of the partnership business and to participate in its management.

Ala. Code § 10-8-43 (1975).

"[A] partnership arises only from an express or implied agreement among the parties and is never established by implication or operation of law.... The surrounding circumstances as well

10

as any express agreement between the parties may evidence the intention of the parties necessary to establish such a relationship." Waters v. Union Bank of Repton, 370 So.2d 957, (Ala. 1979). However, "[i]t is especially difficult to determine if a partnership relationship exists where ... there is no written agreement." Adderhold v. Adderhold, 426 So.2d 457, 459 (Ala. Civ. App. 1983). While there is no settled test for determining the existence of a partnership, Alabama courts review all the relevant circumstances regarding the relationship, including the right to manage and control the business. See Vance v. Huff, 568 So.2d 745 (Ala. 1990). The court in Adderhold listed the relevant circumstances more specifically as the parties' intent and agreement to be partners, a sharing of the profits and losses, and a sharing of management. 426 So.2d at 460.

Applying these principles to this case, it is clear that a partnership, either express or implied, does not exist between Wal-Mart and Murphy Oil. Wal-Mart will not share in Murphy Oil's losses. Wal-Mart does not manage Murphy Oil or its employees in any way. While there certainly is contractual relationship between the two parties, it does not rise to the level of a partnership. Therefore, Wal-Mart cannot be held liable for Murphy Oil's actions on a partnership theory of liability.

The test for the existence of a joint venture is somewhat different than that for a partnership. However, the need for a community of interest and a right to joint control also exist in this context. See Environmental WasteControl, Inc. v. Browning-Ferris Industries, Inc., 657 So.2d 885, 888 (Ala. 1995). The Alabama Supreme Court has held:

> The elements of a joint venture have been held to be: a contribution by the parties of money, property, effort knowledge, skill, or other assets to a common undertaking; a joint property interest in the subject matter of the venture and a

11

> right to mutual control or management of the enterprise; expectation of profits; a right to participate in the profits; and usually, a limitation of the objective to a single undertaking or ad hoc enterprise. While every element is not necessarily present in every case, it is generally agreed that in order to constitute a joint venture, there must be a community of interest and a right to joint control.

R.H. Moore v. Merchants & Planters Bank, 434 So.2d 751, 753 (Ala. 1983). Based upon the same reasons as stated above, Wal-Mart cannot be held liable for Murphy Oil's actions on a joint venture theory of liability either.

### C. Alabama Deceptive Trade Practices Act

Starmart asserts in its Complaint that Wal-Mart has violated §§ 8-19-5(11) and (24) of the ADTPA. (1975). Unlawful trade practices under the ADPTA include "Making a false or misleading statement of fact concerning the reasons for, existence of, or amounts of, price reductions," Ala. Code § 8-22-5(11) (1975), and "Engaging in any other unconscionable, false, misleading, or deceptive act or practice in the conduct of trade or commerce," Ala. Code § 8-22-5(24) (1975). "TRADE or COMMERCE [i]ncludes but is not limited to the advertising, buying, offering for sale ... of any service or goods ... affecting the people of this state." § 8-19-3(8). The AMFMA states that a "violation of the [AMFMA] is an unfair and deceptive trade practice." Ala. Code § 8-22-3 (1975); see also Galanos, 519 So.2d at 1285. Because Wal-Mart may be held liable under the AMFMA, Wal-Mart may also be held liable under the ADTPA.

### D. Conclusion

Based upon the foregoing, Wal-Mart's motion for summary judgment based upon direct liability under the Alabama Motor Fuel Marketing Act and the Alabama Deceptive Trade Practices Act will be denied. Wal-Mart's motion for summary judgment based upon indirect

liability via an implied partnership or joint venture with Murphy Oil will be granted.[4]

This 10th day of December, 1999.

*[signature]*
ROBERT B. PROPST
SENIOR UNITED STATES DISTRICT JUDGE