# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

U.S. DISTRICT COURT
N.D. OF ALABAMA

STARMART, INC., et al.,      )
      )
   Plaintiffs,        )
      )
   vs.         )     CV-99-PT-1143-E
      )
MURPHY OIL USA, INC., et. al.,    )
      )
   Defendants.       )
      )

ENTERED

NOV 0 7 2000

## MEMORANDUM OPINION

This cause comes to be heard upon plaintiffs Starmart, Inc. and Jerry Flummer's

("plaintiffs") Motion for Partial Summary Judgment, filed on Septmber 1, 2000.

## BACKGROUND

The plaintiffs brought this action against Murphy Oil USA, Inc. ("Murphy") and Wal-

Mart for injunctive relief, damages, and attorney's fees under the Alabama Motor Fuel

Marketing Act ("AMFMA" or the "Act"), Ala. Code § 8-22-1 *et seq.* (1975), and the Alabama

Deceptive Trade Practices Act ("ADTPA"), Ala. Code § 8-19-1 *et seq.* (1975).   The plaintiffs

claim that Wal-Mart and Murphy Oil are in an implied partnership or joint venture with each

other, and that together they sold, offered to sell, or advertised for sale gasoline at the Wal-

Mart/Murphy Oil retail outlet in Anniston, Alabama at retail prices below the defendants' "cost

to retailer" in violation of Alabama law.

The plaintiffs are two retail gasoline marketers.  Starmart is an Alabama corporation

which operates two Exxon branded retail gasoline/convenience store locations in Alabama, one

1

of which is located in Anniston, a few hundred yards north of the Wal-Mart/Murphy Oil

location, the other of which is located in Jacksonville, Alabama.  Flummer operates two retail

branded gasoline locations in Oxford, Alabama.

Wal-Mart and Murphy entered into a written lease agreement on November 12, 1998 (the

"Lease") whereby Murphy rents property in Anniston, Alabama owned by Wal-Mart.  Under the

Lease, Murphy pays rent to Wal-Mart for the land that it occupies.  The rent is the larger of

either a predetermined base amount or a certain percentage of the profits.  Murphy determines

the price of the gas sold.  However, Wal-Mart determines the discount available with its "Gift

Card Discount," a discount offered to customers who purchase a "Wal-Mart Gift Card."

Discounts have ranged from three to five cents off per gallon of gas.  The Lease states that if the

price of gasoline dips below the level permitted by applicable law via the Gift Card discount,

then the price should be lowered only to the level permitted by applicable law.  The Lease

further states that Murphy Oil is not required to price its gasoline in an unlawful manner to meet

competitors' prices.

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment is to be granted if there is no genuine issue of material

fact.  United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991).  A

factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for

the non-moving party."  Id.  The evidence of the non-moving party is to be believed, and the

court is not to attempt to perform jury functions such as credibility determinations.  Id.  After

considering everything in the record, all permissible inferences are to be drawn in favor of the

non-moving party.  Clinkscales v. Chevron USA, Inc., 831 F.2d 1565, 1570 (11th Cir. 1987).

When the non-moving party has the burden of proof at trial, it must come forward with

2

sufficient evidence on each element that must be proved.  Earley v. Champion International Corp., 907 F.2d 1077, 1080 (11th Cir. 1990).  If the evidence is merely colorable or is not significantly probative, summary judgment may be proper.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S. Ct. 2505, 2511 (1986).  Summary judgment is appropriate if on any element there would be insufficient evidence to require submission of the case to a jury.  Earley, 907 F.2d at 1080.  "The plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such circumstances, there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."  Celotex Corp. v. Catrett, 477 U.S. 317, 327 106 S. Ct. 2548, 2555 (1986).

### ARGUMENT

Plaintiffs move for partial summary judgment on two issues: (1) Whether Murphy's sales of motor fuel at discounted prices to users of the Wal-Mart Gift Card are subject to the AMFMA prohibition of below-cost sales pursuant to Ala. Code § 8-22-6; and (2) Whether Murphy can sustain a "meeting competition" defense under Ala. Code § 8-22-8(b) by selling motor fuel at prices below the specific prices charged by competitors.  The plaintiffs argue that Murphy's discounted sales of motor fuel to consumers using the Wal-Mart Gift card are subject to Ala. Code § 8-22-6 and that Murphy cannot sustain the "meeting competition" defense provided by Ala. Code § 8-22-8(b).

**Are Murphy's sales of motor fuel at discounted prices to Gift Card users subject to the prohibition of below-cost sales pursuant to Ala. Code § 8-22-6?**

3

The plaintiffs argue that to determine whether Murphy is liable under § 8-22-6, the price of the fuel <u>after</u> the Gift Card discount is applied must be compared to the cost of the fuel as determined by the AMFMA's definition "cost." Specifically, the plaintiffs claim that the definition of "sell" or "sale" in Ala. Code § 8-22-4(7) encompasses both discounted and non-discounted fuel sales. The plaintiffs argue that they should be granted summary judgment on the narrow issue of whether § 8-22-6 applies to discounted sales.

The definition of "sale," found at § 8-22-4(7) is:

"SALE or SELL. Any transfer for a combination, exchange, barter, gift, offer for sale, advertising for sale, soliciting an order for motor fuel and distribution in any manner or by any means whatsoever."

Section 8-22-6 states:

"It shall be unlawful for any person engaged in commerce in this state to sell or offer to sell motor fuel below cost or to sell or offer to sell it at a price lower than the seller charges other persons on the same day and on the same level of distribution, within the same market area, where the effect is to injure competition."

The plaintiffs argue that the statute does not differentiate between discounted and non-discounted sales in the definition of "sale" at § 8-22-4(7). They assert that because the plain language of the statute does not specifically limit the definition of sale to "non-discounted" sales, it must be assumed that the Alabama legislature intended for the statutory definition to encompass both. Consequently, the plaintiffs conclude, because discounted sales are included in the statutory definition, the prohibition in § 8-22-6 against sales below cost applies to discounted sales.

As further support, the plaintiffs point to this court's conclusion in another Memorandum Opinion in this case, dated December 13, 1999, that, although defendant Wal-Mart did not control the price of the gasoline, because it was a "person engaged in commerce" as mentioned

4

in § 8-22-6, it could be found liable under the AMFMA for advertising the sale of discounted gasoline. The plaintiffs appear to contend that this court implicitly decided that § 8-22-6 applied to the sale of gasoline at a discounted price.[1] The plaintiffs also note that, in another case currently in the Northern District of Alabama, District Judge Lynwood Smith, Jr. entered a temporary restraining order and a preliminary injunction against defendant Murphy Oil for selling fuel below cost. The injunction, dated January 3, 2000, prohibited Murphy Oil from selling any grade of fuel to holders of a "Wal-Mart Gift Card" if the price of the fuel per gallon would be less than Murphy Oil's cost as defined in the AMFMA.

With regard to the applicability of § 8-22-6 to the discount prices, Murphy makes a general argument and a specific argument. In general, Murphy argues, discounts on gasoline prices should not be held to fall within the express provisions of § 8-22-6 as a matter of law. In this specific case, Murphy argues that this court cannot grant summary judgment on the statute's applicability because it would amount to an impermissible adjudication of a disputed factual element of the plaintiff's case.

Would an award of partial summary judgment amount to an impermissible adjudication of a disputed factual element?

According to Murphy, no price, regardless of whether it is discounted, is per se subject to the AMFMA. Murphy contends that because the AMFMA is a penal statute, it controls retail prices only when the price is below cost and injures competition in the same market area. Murphy appears to argue that in order to determine whether the AMFMA governs a retail price

---

[1] This court specifically decided that because the statute provided for liability for "any person" who sold or offered to sell motor fuel where the effect was to injure competition, Wal-Mart, as the "person" who advertised the discount, could still be held liable under § 8-22-6 regardless of the fact that it was not a wholesaler or dealer, if all other necessary elements are proven. Memo Op., 5. The court did not conclude that, as a matter of law, the post-discount price of the fuel could bring either Wal-Mart or Murphy within the reach of the statute's penalty.

at all, a court must initially determine:(1) whether the price is below cost and (2) whether competition in the defendant's market area is injured.  These two findings naturally involve questions of fact.  Murphy appears to further argue that only after these determinations are positively made is § 8-22-6 even implicated, after which the plaintiffs still must show that the defendants intended to injure competition before liability can be imposed.[2]  Murphy argues that because, in the instant case, genuine issues of fact exist as to whether the price was actually below cost and whether competition in the plaintiff's market area was actually injured, summary judgment cannot be granted on the applicability of § 8-22-6.[3]

Murphy next contends that summary judgment on the applicability of § 8-22-6 cannot be granted because an award of summary judgment would amount to a partial adjudication of a portion or element of the plaintiff's claim.  Murphy argues that it is improper for this court to adjudicate only a portion of a single claim, citing United States v. $57,433.00, 42 F. Supp. 2d 1293, 1299 (S.D. Fla. 1999), in which the court explained that "it may not enter summary judgment on a portion of a claim– such as the issue of probable cause (which is an element of the government's three causes of action)."  Murphy also relies on Bakalis v. Board of Trustees, 948 F. Supp. 729 (N.D. Ill. 1996), in which the district court declined to rule on a motion for partial summary judgment because "granting summary judgment on the part of a claim is improper" and Mills v. Larson, 56 F.R.D. 63, 64 (W.D. Penn. 1973)("we thus do not now reach the question whether a partial summary judgment can be granted which action is generally reserved

---

[2]  If this is indeed what Murphy argues, Murphy misstates the law.  In McGuire v. Mapco, Inc., 612 So. 2d 417, 422 (Ala. 1992) the Alabama Supreme Court held that the plaintiff's prima facie case under the AMFMA did not include proof of harmful intent; rather, *lack* of harmful intent is available to the defendant as a general defense to either avoid liability or to mitigate the penalty for violation of the statute.

[3]  Indeed, in their briefs for this motion, neither party has pointed to evidence tending to establish whether or not the fuel was sold below cost.

for cases where there are distinct and separate claims and not where there is but a single claim.").

The plaintiffs contend that motions for partial summary judgment are permissible devices that are used to promote the efficient and just resolution of claims by narrowing the issues for trial. The plaintiffs rely on Stillman v. Travelers Ins. Co., 88 F.3d 911, 914 (11th Cir. 1996), in which the Eleventh Circuit held that it lacked jurisdiction to review a district court's grant of partial summary judgment on the single issue of the applicability of a pollution exclusion clause in an insurance policy. The plaintiffs argue that Stillman demonstrates that the Eleventh Circuit recognizes the use of partial summary judgment to dispose of narrow issues within parties' claims and defenses. In addition to Stillman, the plaintiffs cite to a host of cases that acknowledge the disposal of parts of claims through partial summary judgment.

In Stillman, the Eleventh Circuit did not hold that the district court's grant of partial summary judgment was proper or improper. Rather, the Stillman court reversed the district court's grant of final summary judgment that disposed of the case on its merits. Id. at 912. The court found that the district court's entry of final summary judgment was improper because, while the district court had resolved an issue as to the availability of one affirmative defense, the defendant had raised several additional affirmative defenses that the district court had not addressed. Id. at 913-914. The court declared the district court's resolution of the single issue to be a partial summary judgment instead of a total summary judgment, and found that, consequently, it did not have appellate jurisdiction to review the decision. Id. at 914. The fact that the court did not discuss the propriety of the partial resolution, coupled with the fact that the issue that was resolved concerned an affirmative defense rather than an element of the plaintiff's claim causes Stillman to be distinguishable from this case.

Less distinguishable, however, are Moore v. Tri-City Hospital Authority, 696 F. Supp.

7

1496 (N.D. Ga. 1988) and Wright v. Credit Bureau, Inc., 548 F. Supp. 591 (N.D. Ga. 1982). In

Moore, a wrongful discharge action in which the plaintiff alleged that he was fired for exercising

his First Amendment right to free speech, the court noted that it had already granted a motion by

the plaintiff for partial summary judgment on the element of whether the plaintiff's speech

involved a matter of public concern. 696 F. Supp. at 1501. The court then "procee[ed] to

consider the remaining elements of plaintiff's speech claim." In Wright, the court stated that,

"although the court generally may not grant summary judgment on only one portion of a claim,

in some cases summary judgment is proper for one or more distinct issues presented by one

claim. (citing Barker v. Norman, 651 F.2d 1107, 1123 (5th Cir. 1981)("summary judgment may

be proper as to some causes of action but not as to others, or as to some issues but not as to

others, or as to some parties but not as to others)).

Does the AMFMA apply to discount sales?

Murphy argues that the prohibition against selling below cost in the AMFMA does not

apply to discount prices. It notes that, to date, no Alabama case law has specifically applied the

AMFMA to discounted retail fuel prices. Murphy also argues that, like the case law in Alabama,

the AMFMA itself is silent as to the treatment of discounted retail fuel prices.

Murphy begins its argument by reminding the court that the AMFMA is a penal statute,

and that "penal statutes are to reach no further in meaning than their words." Young Oil Co. v.

Racetrac Petroleum, Inc., 757 So. 2d 380, 383 (Ala. 1999). As an example of the strictness with

which the AMFMA is to be construed, defendant Murphy refers the court to Ex parte Purcell

Co., 451 So.2d 801, 802 (Ala. 1984), in which the Alabama Supreme Court held that a penal

statute requiring the appellee to pay to a successful appellant the costs of the appeal did not

include the premiums of a supersedeas bond within the definitions of "costs." According to the

court, because the statute did not specifically mention supersedeas bond premiums and because the use of such bonds was not an integral a part of Alabama appellate custom, their inclusion could not be read into the penal statute.  Id.

The defendants next note that the statute contains neither a definition of "price" nor an explanation of the effect of a retail discount on the status of a price as "at cost" or "below cost." Murphy contends that because the AMFMA does not plainly provide that retail discounts must be considered when determining whether fuel was sold at or below cost, Murphy's use of the discount program cannot be punished under § 8-22-6.[4]  Murphy argues that while the AMFMA does address the effect on the price of fuel of selling other items in combination with the fuel for a single price, the fact that it does not specifically address the effect of discounts offered solely as discounts on the retail price indicates that the legislature intended that they be excluded.

Defendant Murphy also argues that the statute's specific inclusion of the terms "discount" and "rebate" in other sections indicate that the legislature specifically chose to leave them out of the purview of § 8-22-6.  Murphy then asserts that if the AMFMA prohibits consumer discount programs in which fuel sold at a discount is sold below cost, it would make the affirmative defense of "meeting competition" of no effect.  According to Murphy, if the AMFMA applied to every retail discount, it would be too difficult for a retailer to identify and monitor all of its competitors' discounts in order to set its own discount rates in such a way that it does not violate the statute.  Additionally, Murphy points to evidence that it has submitted that it is standard practice in the fuel industry to survey only the posted "street" price of competitors'

---

[4]  The natural conclusion of this argument, if accepted, is that if retail discounts are, as a matter of law, not to be subtracted from the "street" price of the fuel (the price posted) to determine whether the fuel is sold below cost, the plaintiff's cause of action, to the extent that it is based on the sale of gasoline after the Wal-Mart Gift Card discount, cannot survive.

fuel, not the actual price of the fuel after the discount.[5]

Next, Murphy points to the AMFMA's definition of "Cost to Retailer," found at § 8-22-4(16), in which the cost is to be calculated as follows:

> "As applied to retail sales, the invoice or replacement cost of the motor fuel within five days prior to the date of sale, in the quantity last purchased, whichever is less, less all trade discounts, except customary discounts for cash, to which shall be added all applicable state, federal, and local taxes, inspection fees, freight cost, if paid by the retailer, plus the cost of doing business."

(emphasis added). Murphy argues that in the same way that "customary discounts for cash" are not used to calculate the cost to the retailer, presumably because they are discounts based upon the method and promptness of payment,[6] consumer discounts based upon the method of payment should not be used in the calculation of the fuel's price per gallon. Finally, Murphy argues that the plaintiffs' argument that discounted sales of motor fuel are subject to the below-cost restrictions because they are included in the definition of "sale" misstates the issue. According to Murphy, the issue is not whether all sales of motor fuel are subject to the Act, but instead, whether the retail price is affected by consumer discounts.

The plaintiffs, in response, contend that it is undisputed that Murphy advertises and sells gasoline at two different prices– a regular price for non-Gift Card users and a discounted price for Gift Card users– and that sales at the discounted price account for 27% to 48% of Murphy's total retail fuel sales. The plaintiffs maintain that these facts bring Murphy's discount program under the "unambiguous" language of § 8-22-6, which prohibits selling or offering to sell gasoline below cost. The plaintiffs contend that Murphy's actions, involving an exchange with a

---

[5] Heithaus affidavit, para. 10-13; Bentley affidavit, para. 7

[6] Murphy does not support this presumption with a citation to authority.

consumer of fuel for money, fit the "unambiguous" definition of the word "sale" in § 8-22-4(7). The plaintiffs argue that the fact that for 27% to 48% of the time, Murphy exchanged the fuel for less money than the fuel cost Murphy subjects Murphy to § 8-22-6. The plaintiffs emphasize that there is no need for the court to engage in statutory construction because the statute's language is plain.

**Can Murphy avail itself of the "meeting competition defense?"**

The plaintiffs also move for partial summary judgment on the defendant's affirmative defense of "meeting competition." The plaintiffs argue that Murphy cannot use the meeting competition defense for two reasons: (1) Instead of meeting its competitors' prices, Murphy sold its motor fuel to Gift Card users at prices lower than those of its competitors; and (2) Murphy did not make a good-faith effort to meet the specific price of a specific retail competitor.

The meeting competition defense is found at § 8-22-8(b):

> "It is not a violation of this chapter if any price is established in good faith to meet an equally low price of a competitor in the same market area on the same level of distribution selling the same or similar product of like grade and quality or is exempt under § 8-22-13."

(emphasis added).

The sale of fuel to Gift Card users at prices lower than those of Murphy's competitors

The plaintiffs claim that Murphy cannot use the meeting competition defense because it sold fuel at prices lower than that of its competitors. The plaintiffs point to the deposition testimony of Mr. Heithaus, Murphy Oil's Vice President of Retail Marketing, in which Heithaus states that "[i]n Anniston, we did not survey any unbranded competition. . . . we met competition, branded competition, by pricing underneath the branded posted price." Heithaus depo., 168 (emphasis added). The plaintiffs additionally point to various places throughout

11

Heithaus's deposition in which he expresses his belief that Murphy can price gas below a competitor's price and still "meet" competition. Heithaus depo., 74-76, 78-79, 109, 134, 168. The plaintiffs acknowledge Mr. Heithaus's statement that the practice of surveying the price of only brand-name gasoline changed when Murphy began surveying Raceway, a competitor that sells unbranded fuel. According to Heithaus, Murphy began meeting Raceway's posted prices with Murphy's pre-discount prices, which applied to customers not using the Wal-Mart Gift Card. Heithaus depo., 168. The plaintiffs argue that, nevertheless, the price of the gasoline *after* the discount was given undercut the price of Raceway's unbranded fuel.

The plaintiffs use Heithaus's deposition testimony to establish the fact that Murphy "met" its competition only at the street price level, and in reality sold fuel at a price <u>below</u> the price of the competition through the use of the Gift Card.[7] The plaintiffs then cite to <u>McGuire Oil Co. v. Mapco, Inc.</u>, 612 So. 2d 417, 423-424 (Ala. 1992), in which the Alabama Supreme Court held that "[t]he statute cannot be read so as to allow one defendant-competitor to undercut another plaintiff-competitor's prices and then contend that by doing so it is meeting competition. . . . Therefore the meeting competition defense is not available to a defendant that knowingly sets its prices below its competitors."

Murphy contends that the plaintiffs have selectively used Heithaus's deposition testimony to support their assertions. According to Murphy, testimony excerpts that the plaintiffs failed to submit as well as additional affidavits "confirm Murphy's true position regarding the application of the meeting competition defense and its efforts to comply with the

---

[7] The plaintiffs also claim that Murphy's "own records" demonstrate that it knowingly sold its gasoline below the price of its competitors, but they do not point to the specific records that support this assertion in their briefs.

12

AMFMA." Specifically, Murphy points to Heithaus's deposition, in which Heithaus stated that "I think our goal is to meet the competition and be competitive on the street price. . . . we intend to obey the law in each state that we market in." Heithaus depo., 20-21. Elsewhere, Heithause stated "You could be below [the price of] competition and still be meeting competition . . . . your margins could be above the floor limit for selling below cost, and you could be below competition. And I would still say you're meeting competition. I don't think a penny or two or a couple of pennies makes a big difference on that stuff." Id. at 74-75. Murphy contends that these deposition answers and other deposition answers in which Heithaus affirmed Murphy's intent to comply with the AMFMA and to price to meet competition show that, contrary to the plaintiffs' assertions, Murphy did not price below its competition except in those instances where it was still selling gasoline above cost. Murphy also points to the deposition testimony of its pricing manager, Tom Bentley, in which Bentley stated that "Meeting competition means meeting competition," and stated in response to counsel's question of whether "meeting competition" meant meeting the exact price, that "In defining meeting competition, yes." Bentley depo., 27-28.

According to Murphy, it all comes down to "margins" and the insignificance of the distinction between "branded" and "unbranded" fuel. To Bentley, compliance with the AMFMA meant meeting the competition and having a "predetermined margin" of profit over cost. Id. at 32-34. The pricing margin was arbitrarily set, according to Bentley, and at the time that he was pricing manager, the margin was ten cents over cost. Id. Murphy also points to the deposition testimony of the pricing manager who replaced Bentley, David Ridings, who stated that "meeting competition" meant to meet the price of a competitor who priced below Murphy. Ridings depo., 23-24. Specifically, with regard to the AMFMA, Ridings testified that "if [the

price] was lower than competition, then obviously [Alabama is] a below cost state, I've got to look at the margin and make sure I don't go below a minimum margin amount." Id.

Later in his deposition, Ridings addressed branded and unbranded fuel. It is Murphy's position that retailers of brand-name fuel compete just as fiercely with retailers of "unbranded" or non-brand-name fuel as they do with other name-brand retailers. Murphy argues that because there is no real difference between branded and unbranded fuel in the area of competition for sales, Murphy could meet the price of a retailer of unbranded fuel without violating the AMFMA, even though its price would undercut the price of a retailer of branded fuel. Id. at 27-29. However, Ridings stated that Murphy did not price its fuel below that of either a branded fuel competitor or unbranded fuel competitor if, by doing so, it brought the price of Murphy's fuel below the arbitrarily predetermined above-cost margin. Id. Murphy argues that, in light of the deposition testimony of Ridings, Bentley, and Heithaus, the plaintiffs have introduced no evidence that Murphy knowingly or purposefully set a below-cost price within the definition of the AMFMA that undercut its competitors in the Anniston area.[8]

Murphy did not make a good faith effort to meet the specific price of a specific competitor

The plaintiffs' second reason that the court should grant summary judgment on the meeting competition defense is that, in pricing to meet its competitors, Murphy did not make a good faith effort to meet the specific price of a specific competitor. The plaintiffs claim that the language of the meeting competition defense requires "a point-in-time price specific comparison between competitors selling the same or similar product (i.e., grade of motor fuel) in the same market area on the same level of distribution." According to the plaintiffs, the statute permits

---

[8] Murphy does not clarify whether the price that it claims to have diligently kept even with the price of its competition and above a certain minimum of profit-over-cost is the street price or the after-discount price.

the below-cost sale of fuel only if: "(1) for each day in question, the below-cost sales price was established in good faith; (2) to meet an equally low price; (3) at which a retail competitor listed on Murphy Oil's price surveys was selling unleaded regular motor fuel." Under the plaintiffs' interpretation of § 8-22-8(b), Murphy would daily have to discover its competitors' exact promotional offers and discounts, calculate the cost under the AMFMA of its competitors' fuel, taking into account the effect of the promotional offers and discounts on the price of the fuel, and price its own fuel to meet that of its competitors, again taking into account the effect of its own promotional offer on the price of its fuel.

The plaintiffs point to Heithaus's deposition testimony, in which he stated that Murphy's price survey procedure does not make such an in-depth inquiry. Heithaus depo., 25, 125-126. They argue that "it is incumbent on any defendant seeking to use the protection afforded the meeting competition exception to at least make a good faith effort to determine the specific prices that the defendant claims it is meeting." The plaintiffs acknowledge that courts construing the federal Robinson-Patman Act, an act after which the AMFMA was patterned and which contains a similar meeting competition defense, have held that where competitive price information is not readily available, a defendant may use the meeting competition defense if it can show that its pricing system is the result of a good faith effort to meet a program of discounts and rebates given by a competitor on comparable product lines. However, the plaintiffs argue, the information that Murphy needed to make a daily determination of the price of its competitors' fuel in light of discounts and rebates was readily available. The plaintiffs contend that the visibility of retailers' advertisements of prices, rebates, and discounts to motorists on the street is "an essential element to effectively compete in today's motor fuel retail environment." The plaintiffs point to Murphy's banners, pump decals, and numerous large signs that advertise

15

the "street price" of the gasoline without the discount as well as the availability and amount of

the Gift Card discount, and argue that if Murphy made such information so readily available, its

competitors can be expected to have done the same. To the plaintiffs, "it strains the outer limits

of credulity to believe that [Murphy] cannot obtain specific . . . information from its competitors

and then set its discount price accordingly if it truly is making a good faith effort to meet

competition."

In response, Murphy first notes that the "meeting competition" defense in the AMFMA

was based upon federal antitrust laws, specifically the Robinson-Patman Anti-Discrimination

Act. The federal version of the meeting competition defense, found at 15 U.S.C. § 13(b), states

that:

> "Provided, however, that nothing herein contained shall prevent a seller rebutting
> the prima facie case thus made by showing that his lower price or the furnishing
> of services or facilities to any purchaser or purchasers was made in good faith to
> meet an equally low price of a competitor, or the services or facilities furnished
> by a competitor."

Murphy argues that Alabama courts have not specifically addressed all of the ways in which the

Alabama "meeting competition" defense can be satisfied, and that the federal courts'

interpretation of the federal meeting competition defense should be given great weight.

Murphy then argues that in the Eleventh Circuit, a retailer "need not show that its prices

were in fact equal to those of its competitors but must only show facts which would lead a

reasonable and prudent person to believe that the granting of a lower price would in fact meet the

equally low price of a competitor," citing Jones v. The Borden Co., 430 F.2d 568, 572 (5th Cir.

1970) and Alan's of Atlanta, Inc. v. Minolta Corp., 903 F.2d 1414, 1425 (11th Cir. 1990).

Murphy argues that, under Jones and Alan's of Atlanta, the federal act does not require a

showing of a specific competitor's discount price that the retailer was attempting to meet.

Rather, as long as it believed in good faith that it was responding to what it reasonably believed were the lower prices of its competitors, Murphy asserts, it can avail itself of the meeting competition defense. Murphy argues that its Gift Card discount pricing program is supported by federal decisions such as <u>Fall City Industries, Inc. v. Vanco Beverage, Inc.</u>, 460 U.S. 428, 450, 103 S. Ct. 1282, 1296 (1983), in which the Supreme Court upheld a retailer's "territorial pricing" program under the meeting competition defense.

Murphy points to the affidavits of Heithaus and Bentley, in which they state that Murphy developed its pricing program in response to the programs of other retailers such as Shell Oil Company and BP. Heithaus affidavit, para. 10-13; Bentley affidavit, para. 7. These retailers offered various discount programs that consisted of a percentage discount of 3% to 5% off of the price of gas if the customer used a certain credit card. Murphy also refers to various discount promotions offered by other competitors through the use of car washes or station products. Id. Because Murphy's stations were not affiliated with a particular credit card company, did not have car wash facilities, and did not carry a wide variety of station products, Murphy maintains that it believed in good faith that the Wal-Mart Gift card discounts were an appropriate response to its competitors' discount programs. Id; Heithaus depo., 30-31. Both Heithaus and Bentley claim that it was virtually impossible to daily identify the exact discount price of gasoline offered under each of its competitors' various promotions so that Murphy could adjust its own discount. Id. Heithaus and Bentley both claim to not know of any of Murphy's competitors daily monitoring the exact after-discount promotional prices of other retailers' gasoline. According to them, it was standard industry practice to survey only the "street" price, the pre-discount posted price. Id.

Murphy maintains that, under federal law, its good-faith efforts to compete with other

17

gasoline retailers' discount programs would have enabled it to claim the meeting competition defense and that its actions should qualify for the meeting competition defense under the similar AMFMA provision as well.  Murphy argues additionally that when retail gas prices exceeded $1.00 per gallon, as Murphy claims they did for much of 1999, the 3% to 5% discounts on the price of the gasoline sold by Shell and BP exceeded the flat 3-5 cent discount offered by Murphy.  Murphy contends that the evidence of the other discounts offered by Murphy's competitors coupled with the evidence of the industry practice to monitor only "street prices," when evaluated in the light of persuasive federal statutory construction, entitles Murphy to the meeting competition defense or, at the very least, introduces enough question of fact as to Murphy's "good faith" to preserve the question for a jury.

The plaintiffs respond that to allow Murphy to use the meeting competition defense when it admits that, at the time that it was setting its gasoline prices and discount, it did not know whether it was meeting or beating a specific competitor's specific price would ignore the clear "meet not beat" rule of McGuire.  The plaintiffs also point to the specific language of § 8-22-8(b), which requires that the price established to meet competition be established in good faith "to meet an equally low price of a competitor."  The plaintiffs argue that the legislature intended the meeting competition defense to be available only when a defendant can point to a specific price that, in selling its fuel below cost, the defendant attempted in good faith to meet.  The plaintiffs contend that the Alabama Supreme Court in McGuire "refused to place a Federal Robinson-Patman Act gloss on the AMFMA's meeting competition language."  Additionally, the plaintiffs claim that the Supreme Court has held that in order to meet competition, the lowered price had to be aimed at the price of a competitor in individual competitive situations rather than through a general pricing system, citing F.T.C. v. A.E. Staley Co., 342 U.S. 746, 753

18

(1945). Finally, the plaintiffs argue that Murphy's evidentiary submission "does not satisfy the burden that the nonmoving party must sustain in order to avoid summary judgment on a claim or defense when the nonmoving party has the burden of proof."

In Alabama, "Federal case law construing federal statutes upon which Alabama statutes were patterned will be given great weight as persuasive authority in determining construction of a state statute." Rice v. Alabama Surface Mining Comm'n, 555 So.2d 1079, 1081 (Ala. 1989). For example, in Assured Investors Life Insurance Co. v. National Union Associates, Inc., 362 So. 2d 228, 231 (Ala. 1978), the Alabama Supreme Court found that "[Alabama's] Rules of Civil Procedure are based upon, and are strikingly similar to, the Federal Rules of Civil Procedure.  Because these two sets of Rules are virtually verbatim, a presumption arises that cases construing the Federal rules are authority for construction of the Alabama Rules."

Murphy claims that the AMFMA's meeting competition defense was based upon the federal Robinson-Patman Act's meeting competition defense.[9]  The Alabama statute does not, on its face, reference federal anti-trust laws.  However, in McGuire, Justice Maddox, dissenting from the majority opinion, stated that "Much of the phraseology found in the AMFMA was borrowed from federal antitrust laws . . . .  The same type of illegal conduct is the subject of the Sherman Act and the Robinson-Patman Act, respectively."  612 So. 2d 417, 424 (Maddox, J. dissenting).  Justice Maddox went on to cite federal antitrust cases in application to the

_____

[9] The exculpatory language of the two provisions is indeed similar.  The Robinson-Patman Act states that a seller can rebut a prima facie case by showing "that his lower price . . . was made in good faith to meet an equally low price of a competitor." 15 U.S.C. § 13(b)(emphasis added), while the AMFMA states that it is not a violation of the act "if any price is established in good faith to meet an equally low price of a competitor . . . ." Ala. Code § 8-22-8(b) (emphasis added).  However, the AMFMA contains additional qualifying language, specifying " . . . a competitor in the same market area on the same level of distribution selling the same or a similar product of like grade and quality . . . ." (emphasis added).  This qualifying language does not appear in the federal defense provision.

AMFMA's meeting competition defense. Id. at 425 (citing Anheuser-Busch, Inc. v. FTC, 54 F.T.C. 277 (1957); FTC v. Sun Oil Co., 371 U.S. 505 (1963)).  Additionally, in Young Oil Co. v. Racetrac Petroleum, Inc., 757 So. 2d 380, 385 (Ala. 1999), the Alabama Supreme Court, rejecting the interpretation of the AMFMA proffered by the plaintiff, mentioned that "[p]laintiffs have presented no decisions, state or federal, construing the AMFMA or any similar 'below cost' statute in the manner so urged . . . ." (emphasis added).  The Alabama Supreme Court's noting that no similar "below-cost" statute had been given the plaintiff's suggested meaning indicates that the interpretation of a similar statute may be of some persuasive weight.  Therefore, the court will review the Supreme Court and Eleventh Circuit's construction and application of the Robinson-Patman Act's meeting competition defense.

The text of the Robinson-Patman Act's meeting competition defense reads in pertinent part as follows:

> "Provided, however, that nothing herein contained shall prevent a seller rebutting the prima facie case thus made by showing that his lower price or the furnishing of services or facilities to any purchaser or purchasers was made in good faith to meet an equally low price of a competitor, or the services or facilities furnished by a competitor. . . ."

15 U.S.C. § 13(b).

In Falls City Industries, Inc. v. Vanco Beverage, Inc., 460 U.S. 428, 438 (1983), the Supreme Court stated that "This Court consistently has held that the meeting-competition defense 'at least requires the seller, who has knowingly discriminated in price, to show the existence of facts which would lead a reasonable and prudent person to believe that the granting of a lower price would in fact meet the equally low price of a competitor." (citing United States v. United States Gypsum Co., 438 U.S. 422, 451 (1978)).  The Court explained that under the reasonable and prudent person standard, "[i]n most situations, a showing of facts giving rise to a

20

reasonable belief that equally low prices were available to the favored purchaser from a competitor will be sufficient to establish that the seller's lower price was offered in good faith to meet that price." Id. at 439. This standard seems to require the seller to prove something less than a specific price on a specific day. Rather, the Court requires a showing of facts that would lead a reasonable and prudent person to believe that if he lowered the price of the fuel that he was selling to a certain amount, he would meet one of his competitor's already low prices. Id.

The Fifth Circuit had reached a similar conclusion, in Jones v. The Borden Co., 430 F.2d 568, 572 (5th Cir. 1970), stating, "A defendant need not show its prices were in fact equal to those of competitors, but must only show facts which would lead a 'reasonable and prudent person' to believe that the granting to [sic] lower prices would in fact meet the equally low price of a competitor." (citing Callaway Mills Co. v. FTC, 362 F.2d 435, 443-444 (5th Cir. 1966)). Expounding upon its holding in Callaway, the court stated that "we disclaimed a requirement of exact accuracy and tested the discounts by the standard of a reasonable and prudent person attempting to meet his competitor's prices . . . ." Id. at 573.

In order for the plaintiffs to obtain summary judgment against the Murphy in the context of the federal affirmative defense of meeting competition, there would have to be no genuine issue of material fact as to the reasonableness of Murphy's belief that its competitors were offering lower prices and as to the good faith of Murphy's belief that, by giving a 3-5 cent discount off of its street price to users of the Wal-Mart Gift Card, Murphy was meeting its competitors' prices. Celotex, 477 U.S. at 327; Fall City Indus., 460 U.S. at 439. For this reason, the Eleventh Circuit in Alan's of Atlanta, Inc. v. Minolta Corp. noted that the meeting competition defense can rarely be decided on summary judgment. 903 F.2d 1414, 1425-1426 (11th Cir. 1990)(Concept of good faith inherently involves issues of credibility which are

21

beyond trial judge's "ken.").

The fact that Murphy admits that it engaged in a pricing program rather than a competitor-specific response still may not be dispositive. In Falls City Industries, the Supreme Court held that, under the federal meeting competition defense, a defendant's engaging in a broad pricing program such as territorial pricing "can be a perfectly reasonable method–sometimes the most reasonable method– of responding to rivals' low prices. We choose not to read into § 2(b) a restriction that would deny the meeting-competition defense to one whose area-wide price is a well tailored response to competitors' low prices." 460 U.S. at 450.[10]

### CONCLUSIONS OF THE COURT

The court will deny the plaintiffs' motion for summary judgment. In doing so, however, the court will make a few comments which may or may not be helpful to the parties.

First, the court is of the present opinion that, in determining the price of the products sold under the AMFMA, the price compared to cost would, perforce, be the remainder after any discount is deducted from the posted price. The court so concludes based upon: (1) the language of the statute and (2) common sense. The definition of "sale or sell" refers to "in any manner or by any means whatsoever." Common sense dictates that the statute cannot be circumvented by merely saying "This is our price, but you get a discount off that price." While the court presently so concludes, it will not grant summary judgment on this sales/price determination issue because it is a legal issue which can be addressed in jury instructions or court conclusions after findings of fact. The court is not likely, however, to change its opinion in the absence of

---

[10] The Court clarified this decision by requiring that "a seller must limit its lower price to that group of customers reasonably believed to have the lower price available to it from competitors. A response that is not reasonably tailored to the competitive situation as known to the buyer, or one that is based on inadequate verification, would not meet the standard of good faith." Id. Of course, the thorny issues of good faith and reasonableness again come into play when evaluating a defendant's pricing program.

beyond trial judge's "ken.").

The fact that Murphy admits that it engaged in a pricing program rather than a competitor-specific response still may not be dispositive. In <u>Falls City Industries</u>, the Supreme Court held that, under the federal meeting competition defense, a defendant's engaging in a broad pricing program such as territorial pricing "can be a perfectly reasonable method– sometimes the most reasonable method– of responding to rivals' low prices. We choose not to read into § 2(b) a restriction that would deny the meeting-competition defense to one whose area-wide price is a well tailored response to competitors' low prices." 460 U.S. at 450.[10]

## CONCLUSIONS OF THE COURT

The court will deny the plaintiffs' motion for summary judgment. In doing so, however, the court will make a few comments which may or may not be helpful to the parties.

First, the court is of the present opinion that, in determining the price of the products sold under the AMFMA, the price compared to cost would, perforce, be the remainder after any discount is deducted from the posted price. The court so concludes based upon: (1) the language of the statute and (2) common sense. The definition of "sale or sell" refers to "in any manner or by any means whatsoever." Common sense dictates that the statute cannot be circumvented by merely saying "This is our price, but you get a discount off that price." While the court presently so concludes, it will not grant summary judgment on this sales/price determination issue because it is a legal issue which can be addressed in jury instructions or court conclusions after findings of fact. The court is not likely, however, to change its opinion in the absence of

---

[10] The Court clarified this decision by requiring that "a seller must limit its lower price to that group of customers reasonably believed to have the lower price available to it from competitors. A response that is not reasonably tailored to the competitive situation as known to the buyer, or one that is based on inadequate verification, would not meet the standard of good faith." <u>Id.</u> Of course, the thorny issues of good faith and reasonableness again come into play when evaluating a defendant's pricing program.

specific controlling or highly persuasive authority.

With regard to the "meeting competition defense" issue, the court concludes that a "good faith" kind of defense in the context of the facts of this case is too fact-oriented to allow for summary judgment. This is particularly true when, apparently, other dealers offer discounts associated with credit cards, etc.

Before trial, this court directs the parties to highlight pertinent portions of controlling or highly persuasive (in the absence of controlling) authority on all issues.

The motion will be Denied.

This 3rd day of November 2000.

ROBERT B. PROPST

SENIOR UNITED STATES DISTRICT JUDGE

The parties should also address the issue of the scope of "meeting competition." Can the defendant meet any one competitor's price? During what time frame, etc.?